**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ERNEST L. MESSING,
Plaintiff-Appellant,

v.

CSX TRANSPORTATION,
INCORPORATED,
Defendant-Appellee,

and                                                                 No. 98-1516

UNION TANK CAR COMPANY; OLIN
CORPORATION,
Defendants,

v.

BURRIS CHEMICAL, INCORPORATED,
Third Party Defendant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-96-188-MU)

Argued: December 2, 1998

Decided: January 15, 1999

Before WILLIAMS and MOTZ, Circuit Judges, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** John F. Ayers, III, DELANEY & SELLERS, P.A., Charlotte, North Carolina, for Appellant. John R. Jolly, Jr., POYNER & SPRUILL, L.L.P., Raleigh, North Carolina, for Appellee. **ON BRIEF:** Robert C. Dortch, Jr., DELANEY & SELLERS, P.A., Charlotte, North Carolina, for Appellant. Cynthia V. McNeely, POYNER & SPRUILL, L.L.P., Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ernest Messing sued CSX Transportation, Inc., Union Tank Car Co., and Olin Corp. for personal injuries sustained in a railroad car accident, asserting negligence and negligence per se under North Carolina tort law. The district court granted summary judgment to the defendants. The court reasoned that the Federal Railway Safety Act preempted Messing's state tort claims and, alternatively, even if not preempted, Messing had forecast insufficient evidence tending to show that the defendants' negligence caused his injuries to prevail on any of these claims. For the reasons discussed below, we affirm.

I.

On May 23, 1994, Ernest Messing sustained severe injuries in a railroad car accident at the Burris Chemical plant in Charlotte, North Carolina. At the time of the accident, Burris employed Messing. Burris's Charlotte plant is located adjacent to CSX Transportation, which owns the main railroad line thereon. Burris owns and maintains the siderail or spur leading directly to the Burris plant, which was still under construction at the time of the accident.

2

Sometime prior to the date of the accident, Olin Chemical shipped an order of caustic soda in tank car UTXL 25324 to Burris for use in its production of bleach. Union Tank Car Co. manufactured and owned the tank car used for this shipment; Olin leased the car from Union Tank Car. On May 19, 1994, CSX Transportation delivered the shipment to the Burris plant, where it parked the tank car on Burris's sidetrack and set the car's hand brake.

Four days later, on May 23, Burris instructed employees Messing, Bruce Garren, and plant manager Duane Outhwaite to move tank car UTXL 25324 from its position on the siderail to a position closer to the plant, in order to assist a contractor working on construction of the facility. Burris did not ask CSX to move the tank car nor did the company inform CSX of the activity until after the accident. Instead, Burris employees attempted to move the car independently.

In order to move the car, the men had to detach car UTXL 25324 from the adjacent car by pulling a pin out of the coupling device that held the cars together. They therefore needed to create some slack in the coupling device. Outhwaite, Messing, and Garren used a "pinch bar" as a lever to try to inch the car toward its neighbor and create the necessary slack. Before beginning this task, Outhwaite visually inspected the hand brakes on the car and noted that they were fully set and holding. As Garren and Messing attempted to move the car using the pinch bar, Outhwaite tried to release the hand brake using its wheel. Unable to slowly back off the brake as expected, Outhwaite fully released the brake and then reset it so that the brake was close to but not fully "tied down". Outhwaite repeated this procedure several times while Garren and Messing attempted to nudge the car forward. When Messing finally moved the car, Outhwaite pulled the pin and uncoupled the cars.

Outhwaite testified that he expected the car to remain stationary following the uncoupling procedure, held in place by the hand brake. Once unleashed, however, tank car UTXL 25324 began to move down the track toward Messing. Garren soon alerted Outhwaite that Messing was trapped under the car. Outhwaite ran to the platform and tightened the hand brake as much as he could -- a few more clicks -- but the car continued to roll. It eventually stopped approximately

3

35-40 feet down the track, with Messing pinned underneath. Injuries sustained in the accident led to the amputation of Messing's left leg.

Messing alleges common law negligence on the part of all defendants and negligence per se against defendant CSX for violating the hand brake standards set forth in the Federal Safety Appliance Act. See 45 U.S.C.A. § 11 (1986) (repealed 1994 and recodified at 49 U.S.C.A. § 20302 (1997)). The defendants counter that Messing has failed to forecast evidence sufficient to make out a claim for common law negligence or negligence per se and that, even if Messing had enough evidence to sustain such charges, the Federal Railway Safety Act (FRSA) preempts his state tort claims. Because we conclude that Messing has failed to forecast sufficient evidence to make out a claim under North Carolina law, we need not address the question of whether the FRSA would preempt valid state law claims in this context.

II.

Messing alleges negligence against all defendants. In North Carolina, "[t]he elements of a cause of action based on negligence are: [1] a duty, [2] breach of that duty, [and 3] a causal connection between the conduct and the injury and actual loss." Davis v. North Carolina Dept. of Human Resources, 465 S.E.2d 2, 6 (N.C. App. 1995). Even if we assume, for purposes of summary judgment, that defendants owed a legal duty to Messing in this context -- that of providing an efficient hand brake on the tank car-- Messing has failed to forecast any evidence that the defendants breached this duty or that such a breach was the proximate cause of Messing's injuries. To demonstrate breach, Messing must show that the hand brake did not "conform to the standard required." Id. (internal quotation marks omitted). To prove proximate cause, he must show that it was reasonably foreseeable to a "person of ordinary prudence," that such a defective hand brake would cause injury to a person in Messing's position. Id. (internal quotation marks omitted). Messing has utterly failed to forecast such evidence.

None of the experts in this case was able to point to any evidence of a defect in the hand brake's design or functioning that might have caused the accident. Nor could the experts articulate any reasonable

4

act or omission on the part of defendants that would have prevented the occurrence. Indeed, the experts made numerous suggestions as to the possible causes of the accident, but each was vague and unsubstantiated. No evidence in the record before us connects any of these proffered causes to an act or omission on the part of any of the defendants.

For example, Messing argues that defendants breached their duty because they failed to inspect the car properly. However, Messing's own expert, Colon Fulk, explained that a visual inspection would not have revealed all potential causes of the brake failure, such as the need for lubrication or the presence of foreign debris in the mechanism, and that defendants were not required to perform a more through inspection in this circumstance. Moreover, it is undisputed that Outhwaite performed his own visual inspection before attempting to move the tank car and found no deficiencies in the brake system. Hence, Messing has forecast no evidence that defendants, exercising reasonable care, should have learned of these possible defects.

Finally, even if defendants breached their duty to Messing, he has proffered no evidence that such a breach was the proximate cause of his injuries. To the contrary, Messing's experts were unable to connect the only evidence of a malfunctioning hand brake -- Outhwaite's inability to slowly loosen the brake -- to the cause of the accident. The experts' suggestions therefore remain mere theories without connection to defendants' conduct; these are insufficient to defeat summary judgment. See Hinkle v. City of Clarksburg , 81 F.3d 416, 423 (4th Cir. 1996) (claim "based on a theory without proof" was "ripe for an adverse summary judgment determination").

Messing's claim of negligence based on defendant CSX's failure to bunch the slack between the rail cars likewise must fail because he has forecast no evidence tending to show that CSX knew or should have known that Burris employees would try to move the cars from the spur on their own. In fact, Outhwaite testified at his deposition that Burris had never used the pinch bar to move cars at the Charlotte site prior to the day of the accident. Outhwaite also explained that Burris intended to allow CSX to move the tank cars onto the site as they were needed. The pinch bar was to be used to move the cars "no more than a couple of feet" in order to precisely align the cars to the

5

mechanisms at the plant. Burris employees moved the tank car involved in Messing's accident from its stationary position on the side-rail in order to accommodate a contractor; this was not a typical maneuver that CSX should have anticipated. See Bolkhir v. North Carolina State Univ., 365 S.E.2d 898, 901 (N.C. 1988).

The record thus contains no evidence tending to show that defendants knew or should have known either that the hand brake was not functioning properly or that Burris employees would attempt to move the car from the spur.

Finally, Messing's claim of negligence per se against defendant CSX must also fail. Messing claims that CSX violated the Federal Safety Appliance Act because the hand brake on tank car UTXL 25324 was inefficient at the time of the accident. See 49 U.S.C.A. § 20302. Violation of a safety statute constitutes negligence per se in North Carolina. See e.g., Hart v. Ivey, 420 S.E.2d 174, 177 (N.C. 1992); Lamm v. Bissette Realty, Inc., 395 S.E.2d 112, 114 (N.C. 1990). Messing has offered expert testimony that car UTXL 25324's hand brake was inefficient at the time of the accident. Evidence of the violation alone, however, is not enough to impose liability on defendant CSX. In order to make a claim for negligence per se in North Carolina, the plaintiff must show that the defendant knew or should have known that the statute had been violated, that the defendant failed to remedy the violation, and that the violation was the proximate (i.e. foreseeable) cause of the injury suffered by plaintiff. See Lamm, 395 S.E.2d at 114. Again, Messing's failure to show that CSX knew or should have known of any fault or inefficiency in the hand brake is fatal to his claim.

III.

Accordingly, the district court's order granting summary judgment to defendants is

AFFIRMED.

6